NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL GOSLING,                     :
                                  :   Civil Action No. 12-1043 (CCC)
                Petitioner,       :
                                  :
           v.                     :     OPINION
                                  :
WAYNE MULLER, et al.,             :
                                  :
                Respondents.      :

APPEARANCES:

     PAUL GOSLING, Pro Se Petitioner
     A# 045-881-184
     #234995  LOC-E-5-S
     Hudson County Correctional Center
     35 Hackensack Avenue
     Kearny, New Jersey 07032

     ALLAN B. K. URGENT, AUSA
     OFFICE OF THE U.S. ATTORNEY
     970 Broad Street, Suite 700
     Newark, New Jersey 07102
     Counsel for Respondents

CECCHI, District Judge.

     Petitioner Paul Gosling ("Petitioner"), an immigration
detainee presently confined at the Hudson County Correctional
Center in Kearny, New Jersey, has submitted a petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging
his continuing detention without a bond hearing.  The sole

proper respondent is Oscar Aviles, Administrator at Hudson County Correctional Center, where Petitioner is in custody.[1] Because it appears from a review of the parties' submissions that Petitioner is not entitled to relief at this time, the Petition will be dismissed without prejudice or, in the alternative, denied without prejudice.

## I.   BACKGROUND

Petitioner Paul Gosling, a native and citizen of Jamaica, was admitted to the United States on or about May 12, 1997, as a lawful permanent resident alien.  (Petition at ¶ 14; Respondent's Declaration of Patrick Heerey, dated August 15, 2012 ("Heerey Decl.") at ¶ 4.)  On March 24, 1999, Petitioner was convicted in a New York state court on a charge of third degree Attempted Criminal Sale of a Controlled Substance (Cocaine).  (Heerey Decl., ¶ 5 and Exhibit B, Certificate of Disposition Indictment dated May 14, 2010.)

On May 17, 2010, Petitioner was taken into custody by the U.S. Department of Homeland Security ("USDHS"), Immigration and

---

[1] Petitioner also has named various remote federal officials as respondents.  The only proper respondent to a habeas petition challenging current confinement is the warden of the facility where the prisoner is being held.  Accordingly, Administrator Aviles is the only properly named respondent in this action. *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004); *Yi v. Maugans*, 24 F.3d 500 (3d Cir. 1994).

Customs Enforcement ("ICE") for detention during removal
proceedings.  (Petition at ¶ 5; Heerey Decl., ¶ 8 and Ex. C,
Notice to Appear in Removal Proceedings.)  The Government
contends that on May 8, 2010, the New York Police Department
arrested Petitioner, and Petitioner was arraigned at the Kings
County Criminal Court in New York the next day on charges of
criminal sale of marijuana and criminal possession of marijuana
in violation of New York state law.  (Heerey Decl., ¶ 6.)  On
May 13, 2010, ICE encountered Petitioner at Rikers Island
Correctional Facility.  Thereafter, on May 17, 2010, ICE
arrested and detained Petitioner pursuant to 18 U.S.C.
§ 1226(c).  The next day, on May 18, 2010, ICE served Petitioner
with a Notice to Appear in Removal Proceedings and placed him in
removal proceedings.  (Heerey Decl., ¶¶ 7-9, Ex. C.)

     The Notice to Appear alleges that Petitioner's 1999 drug
conviction renders him subject to removal from the United States
pursuant to the Immigration and Nationality Act ("INA") §
237(a)(2)(A)(iii)(aggravated felony drug trafficking and attempt
conviction) and § 237(a)(2)(B)(i)(controlled substance
violation).  (Heerey Decl., ¶ 9, Ex. C.)  On May 27, 2010,
Petitioner appeared *pro se* before an Immigration Judge; however,
the matter was adjourned to allow Petitioner to retain counsel.

Thereafter, removal proceedings were adjourned on multiple occasions to allow time for Petitioner to obtain counsel, among other reasons.  Finally, on December 7, 2011, a merits hearing was held on Petitioner's application for relief from removal, and the Immigration Judge denied Petitioner's application and ordered him removed to Jamaica.  (Heerey Decl., ¶¶ 10-20, Ex. D.)

On January 6, 2012, Petitioner filed a timely appeal with the Board of Immigration Appeals ("BIA").  Petitioner made several briefing extension requests.  On March 26, 2012, Petitioner filed a motion for a bond hearing with the Immigration Judge.  The Immigration Judge denied Petitioner's application for a bond on April 11, 2012, pursuant to 8 U.S.C. § 1226(c).  Petitioner also appealed the Immigration Judge's order denying a bond.  (Heerey Decl., ¶¶ 21-24.)

On May 30, 2012, the BIA dismissed Petitioner's appeal of the Immigration Judge's removal order, making Petitioner's Order of removal administratively final.  On July 12, 2012, the BIA dismissed Petitioner's bond appeal as moot.  (Heerey Decl., ¶¶ 25, 26, Exs. E and F.)

On June 18, 2012, ICE served Petitioner with a Warning for Failure to Depart and Instruction Sheet Regarding Requirement to

Assist in Removal. (Heerey Decl., ¶ 27.)[2] On June 19, 2012,

Petitioner filed a Petition for Review ("PFR") and a Motion for

a Stay of Removal with the United States Court of Appeals for

the Second Circuit (Case No. 12-2465). In accordance with a

forbearance agreement with the Second Circuit, ICE did not

attempt to remove Petitioner while his PFR and Motion for a Stay

of Removal remained pending. (Heerey Decl., ¶ 28.) On August

14, 2012, the Second Circuit issued an Order striking

Petitioner's Motion for a Stay of Removal from the record.

(*Id.*, ¶ 29.) The PFR is still pending before the Second

Circuit.

On or about February 21, 2012, Petitioner filed this habeas

petition pursuant to 28 U.S.C. § 2241. Petitioner alleges that

his pre-final removal order detention without a bond hearing was

unlawful. Petitioner contends that his detention should have

been discretionary under 8 U.S.C. § 1226(a) because he was

---

[2] The Court observes that the Government has failed to attach a
copy of the Warnings notice. Under 8 U.S.C. § 1231(a)(1)(C),
"[t]he removal period shall be extended beyond a period of 90
days ... if the alien fails or refuses to make timely
application in good faith for travel or other documents
necessary to the alien's departure or conspires or acts to
prevent the alien's removal subject to an order of removal."
Here, the only "evidence" of lack of cooperation that Respondent
has provided are unattributed hearsay statements. Accordingly,
Respondent has not established that Petitioner has failed to
cooperate.

arrested and detained by ICE more than ten years after his
release from incarceration for the criminal offense that is the
basis for his removal proceedings.  (Petition, pg. 13.)
Petitioner also asserts that his prolonged detention pending
removal proceedings violates his due process rights under the
Constitution.  (*Id.*, pp. 13-14.)  Petitioner finally asserts
that the rule of constitutional avoidance requires construing
the INA detention statutes to avoid constitutional problems.
(*Id.*, pg. 14.)

    In his reply to the Government's answer, Petitioner states
that his state "criminal case is still ongoing and is currently
before the New York State Court of Appeals."  (Petitioner's
Reply at pg. 13.)  Petitioner further alleges that he
understands that the Jamaican consulate will not issue travel
documents because of Petitioner's pending New York state court
appeal regarding his criminal conviction, and his PFR before the
Second Circuit.  (*Id.*)

    Petitioner's reply also appears to concede that his
detention is now pursuant to 8 U.S.C. § 1331, rather than 8
U.S.C. § 1226, because he is subject to a final order of
removal, as argued by the Government in its answer to this
petition.  However, Petitioner argues that his indefinite

6

detention is unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he can show that there is no likelihood of his removal in the foreseeable future.  Petitioner also argues that his prolonged detention merits a bond hearing.  In support of these claims, Petitioner alleges that the Jamaican consulate will not issue travel documents in the foreseeable future as evidenced by the fact that Deportation Officer Patrick Heerey has been communicating with the Jamaican consulate for nine months and no travel documents have been issued.  Indeed, Petitioner alleges that deportation officers have been communicating with the Jamaican consulate since May 16, 2012, and no travel documents have been provided.  (Pet. Reply, pp. 14-18.)

## II. RELEVANT STATUTES

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings.  Title 8 U.S.C. § 1226(a) provides the Attorney General with the authority to arrest, detain, and release an alien during the pre-removal-order period when the decision as to whether the alien will be removed from the United States is pending.  The statute provides:

(a) Arrest, detention, and release

7

On a warrant issued by the Attorney General, an alien may
be arrested and detained pending a decision on whether the
alien is to be removed from the United States. Except as
provided in subsection (c) of this section and pending such
decision, the Attorney General—
(1) may continue to detain the arrested alien; and
(2) may release the alien on—
    (A) bond of at least $1,500 with security approved by,
    and containing conditions prescribed by, the Attorney
    General; or
    (B) conditional parole; but
(3) may not provide the alien with work authorization
(including an "employment authorized" endorsement or other
appropriate work permit), unless the alien is lawfully
admitted for permanent residence or otherwise would
(without regard to removal proceedings) be provided such
authorization.

(b) Revocation of bond or parole
The Attorney General at any time may revoke a bond or
parole authorized under subsection (a) of this section,
rearrest the alien under the original warrant, and detain
the alien.

(emphasis added.)

Certain criminal aliens, however, are subject to mandatory

detention pending the outcome of removal proceedings, pursuant

to 8 U.S.C. § 1226(c)(1)(B), which provides in relevant part

that:

The Attorney General shall take into custody any alien who—

(A) is inadmissible by reason of having committed any
offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense
covered in Section 1227(a)(2)(A)(ii), (A)(iii), (B), (C),
or (D) of this title, ...
when the alien is released, without regard to whether the
alien is released on parole, supervised release, or

probation, and without regard to whether the alien may be
arrested or imprisoned again for the same offense.

(emphasis added).  Section 1226(c)(2) permits the release of

criminal aliens only under very limited circumstances not

relevant here.

In short, detention under § 1226(a) is discretionary and

permits release on bond, while detention under § 1226(c) is

mandatory.

Title 8 U.S.C. § 1231(a) governs "post-removal-order"

detentions. Section 1231(a)(1) requires the Attorney General to

attempt to effectuate removal within a 90-day "removal period."

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively
final.

(ii) If the removal order is judicially reviewed and if a
court orders a stay of the removal of the alien, the date
of the court's final order.

(iii) If the alien is detained or confined (except under an
immigration process), the date the alien is released from
detention or confinement.

8 U.S.C. § 1231(a)(1)(B).  Section 1231(a)(6) permits continued

detention if removal is not effected within 90 days.

Removal can be delayed by, *e.g.*, the need to make

arrangements with the destination country.  In addition, the

removal period can be restarted multiple times by various

9

superseding events, such as a new stay order or a detention on criminal charges. *See Sayed v. Holder*, 2012 WL 458424 (D.N.J. Feb. 9, 2012). The U.S. Supreme Court has adopted a rule of thumb that a post-removal detention of up to six months is reasonable, but that a bond hearing may be required after that time. *Zadvydas v. Davis*, 533 U.S. 678 (2001).

"An order of removal made by the immigration judge at the conclusion of proceedings ... shall become final ... [u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R. § 1241.1(a).

In the instant case, the BIA dismissed Petitioner's appeal from the Immigration Judge's order of removal on May 30, 2012. Thus, on that date, Petitioner's removal order became administratively final and his detention under the provisions of 8 U.S.C. § 1231(a) commenced.[3] *See* 8 U.S.C. 1231(a)(1)(B)(i). Therefore, this Court will consider Petitioner's challenge to his detention under the provisions of 8 U.S.C. § 1231(a), rather

---

[3] This Court notes that, even though Petitioner filed a PFR with the Second Circuit on June 19, 2012 that remains pending, because that Court denied his motion to stay his removal on August 14, 2012, Petitioner is not subject to 8 U.S.C. § 1231(a)(1)(B)(ii). If a stay had been granted, that section would provide that Petitioner's removal period would not commence until the Second Circuit's order disposing of the petition for review becomes final.

than the pre-removal order statutes of 28 U.S.C. §§ 1226(a) and (c), as first argued by Petitioner in his habeas petition.[4]

### III. ANALYSIS

A. Jurisdiction

Under 28 U.S.C. § 2241(c), habeas relief "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is alleged to be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

This Court has subject matter jurisdiction over this Petition under § 2241 because Petitioner was detained within its

---

[4] At the time that Petitioner filed this habeas petition, his removal proceedings were ongoing and he was detained pursuant to the mandatory detention provision of 8 U.S.C. § 1226(c). Petitioner argued that because he was not taken into custody immediately upon release from jail for the crime that served as the basis for his removal proceedings, his detention more properly should have been under 8 U.S.C. § 1226(a), which allows for a bond hearing. Since the time when Petitioner first filed this habeas petition, however, his order of removal has become administratively final and the issue of detention must be examined under 8 U.S.C. § 1231(a).

11

jurisdiction, by a custodian within its jurisdiction, at the time he filed his Petition.  Petitioner also asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c), and that it violates his due process rights.  *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Bonhometre v. Gonzales*, 414 F.3d 442, 445-46 (3d Cir.2005).

B. Petitioner's Detention

Title 8 U.S.C. § 1231(a) directs the Attorney General to remove aliens within ninety (90) days of the entry of a removal order.  8 U.S.C. § 1231(a)(1)(A).  The statute then commands that "[d]uring the removal period, the Attorney General shall detain the alien," 8 U.S.C. § 1231(a)(2), and with respect to criminal recidivist aliens, specifically provides that, "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found ... deportable under section 1227(a)(2) ... of this title."  8 U.S.C. § 1231(a)(2).  For purposes of this Court's analysis of any post-final order period of detention, this statutory ninety (90) day "removal period," during which detention is mandatory, begins on the date the order of removal becomes administratively final.  *See* 8 U.S.C. § 1231(a)(1)(B)(i).

At the end of the ninety (90) day period, ICE may continue
to hold the alien, or it may grant supervised release.  8 U.S.C.
§§ 1231(a)(3) and (6).  The discretion to detain an alien under
§ 1231(a) is limited by the Fifth Amendment's Due Process
clause.  *See Zadvydas*, 533 U.S. at 693-94.  In *Zadvydas*, the
United States Supreme Court interpreted § 1231(a)(6) to include
"an implicit limitation" on detention.  *Id.* at 689.  The Court
determined that "[§ 1231(a)(6)], read in light of the
Constitution's demands, limits an alien's post-removal-period
detention to a period reasonably necessary to bring about that
alien's removal from the United States.  It does not permit
indefinite detention."  *Id.*  "[F]or the sake of uniform
administration in the federal courts," the Court recognized six
(6) months as a presumptively reasonable period of detention.
*Id.* at 701.

Thus, the Government may not detain indefinitely an alien
that has been ordered removed, but may detain such an alien only
for a period reasonably necessary to secure his removal.  More
specifically, once the presumptively-reasonable six-month period
of post-removal-order detention has passed, a detained alien
must be released if he can establish that his removal is not

reasonably foreseeable.[5]   The alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing.[6]   *Zadvydas*, 533 U.S. at 701.   In assessing whether an alien has made the required showing, it must be remembered that, while the Supreme Court in *Zadvydas* emphasized that the expiration of the six month presumptively-reasonable period of detention did not mandate release, it also stated that as the period of detention grows "what counts as the 'reasonably foreseeable future' conversely shrinks."   533 U.S. at 701 (citation omitted).

As set forth above, the removal period starts on the latest of the following: (a) the date when the order of removal becomes administratively final (that is, appeal to the BIA was either

_____

[5] Notably, the period Petitioner spent in ICE custody prior to having his order of removal finalized is of no relevance to his detention during the "removal period."

[6] After *Zadvydas*, ICE enacted new regulations requiring DHS to conduct a custody review for detained aliens prior to the expiration of the ninety day removal period.   *See* 8 C.F.R. § 241.4(k)(1)(i).   If the district director denies release upon that review, he or she may retain responsibility for custody determinations for up to three months (i.e., until the six month presumptively reasonable period established in *Zadvydas* expires), or refer the alien to the Headquarters Post-Detention Unit ("HQPDU") for further custody review.

14

taken and ruled upon, or the time to appeal expired); or (b) if the removal order is judicially reviewed and a circuit court orders a stay of the removal, the date of the court's final order as to that removal, or (c) if an alien is detained or confined (except under an immigration process), the date when the alien is released from confinement. *See* 8 U.S.C. § 1231(a)(1)(B).

However, the "removal period" begins anew upon each subsequent occurrence of one of the designated events set forth in § 1231(1)(a)(B) above. *See Michel v. Immigration and Naturalization Service*, 119 F. Supp.2d 485 (M.D.Pa. 2000); *Yaguachi v. Clancy*, 2012 WL 1495540 (D.N.J. April 27, 2012. *See also Pierre v. McKusey*, 2009 WL 464444, at *2 (D.N.J. Feb.24, 2009)(an appeal challenging an order of removal restarts the Removal Period.). As the court in *Michel* explained:

> [There cannot] be ["]only one ["] removal period[:] . . . that is the only rational reading of the statute. . . . T]he statute provides that the removal period begins on the latest of several dates. The passing of one date does not stop the operation of the statute. In a sense, the only way to apply the statute to a given situation is retrospectively. That is, the removal period begins when the removal order becomes final. If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends]. Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred. If there is another potential event, there is another

potential beginning date for the removal period. The only
sensible reading of this provision is that [DHS/ICE] is
required to effectuate the removal within 90 days of
certain events, but will have another 90 days if another
one of the designated events occurs at a later date. The
obvious reason for this is that [DHS/ICE]'s authority to
effect the removal is suspended due to the occurrence of
the later event (such as a stay order [or a new detention
on criminal charges]).

*Michel,* 119 F. Supp. 2d at 498.

In the instant case, Petitioner's order of removal became
administratively final on May 30, 2012, the date the BIA
dismissed his appeal.  Thus, his 90-day removal period began on
that date.  However, shortly thereafter, on June 19, 2012,
Petitioner filed a PFR and a motion for a stay of removal.  The
motion for a stay was dismissed by the Second Circuit on August
14, 2012, so the removal period began to run anew on that date.[7]
Consequently, the 90-day period of mandatory detention began on
August 14, 2012 and expired on November 12, 2012.  As such, the
presumptively reasonable six-month period of detention only
recently expired on February 12, 2013.

---

[7] ICE and the Second Circuit have agreed that, once a motion for
a stay of removal has been filed by an alien detainee, ICE does
not attempt to remove the alien until the motion is denied or
the stay is lifted.  Consequently, from June 19, 2012, when
Petitioner filed his motion for a stay, and August 14, 2012,
when the Second Circuit dismissed the motion for a stay, ICE
made no attempts to remove Petitioner and his removal period
began to run again on August 14, 2012.

To state a claim under *Zadvydas*, the six-month presumptively-reasonable removal period must have expired at the time the Petition is filed.  A prematurely-filed petition must be dismissed without prejudice to the filing of a new Petition once the removal period has expired.  *See, e.g., Rodney v. Mukasey*, 340 Fed. Appx. 761 (3d Cir. 2009); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002); *Hall v. Sabol*, 2012 WL 3615464, at *3 (M.D.Pa. Aug. 21, 2012); *Ufele v. Holder*, 2012 WL 1065877 (3d Cir. March 30, 2012); *Fahim v. Ashcroft*, 227 F. Supp.2d 1359, 1363 (N.D.Ga. 2002).  Here, Petitioner submitted his Petition on February 21, 2012, before his removal period began on May 30, 2012.  Thus, the claim was not ripe at the time Petitioner initiated this action.  Moreover, when Petitioner filed his reply, on September 12, 2012, the six-month presumptively reasonable removal period had not yet expired. Accordingly, the Petition must be dismissed without prejudice as premature.

Alternatively, to the extent that Petitioner's detention is now beyond the six-month time frame, this Court finds that this petition is without merit.  Petitioner has not presented evidence that there is no significant likelihood of his removal in the reasonably foreseeable future.  The *Zadvydas* court held

that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future," stating that the alien petitioner has the burden of "provid[ing] good reason to believe that there is no [such] likelihood" before the government respondents would be required to provide rebuttal evidence.  *See* *Zadvydas*, 533 U.S. at 701.  *See also Encarnacion-Mendez v. Attorney General of U.S.*, 176 Fed. Appx. 251, 254 (3d Cir. 2006).  As the Third Circuit explained,

> Once the six-month period has passed, the burden is on the alien to 'provide [ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future ....' *Zadvydas v. Davis*, 533 U.S. 678, 701 ... (2001). Only then does the burden shift to the Government, which 'must respond with evidence sufficient to rebut that showing.' *Id.*

> *Barenboy v. Attorney General of U.S.*, 160 Fed. Appx. 258, 261 n. 2 (3d Cir. 2005).

Here, Petitioner's PFR is currently pending within the Second Circuit.  He has shown no evidence that, upon decision of his appeal, he would not be removed within the proscribed time.  Rather, Petitioner only suggests that his removal is not reasonably foreseeable because ICE has been unable to obtain travel documents since May 2012.  However, as discussed above, ICE's efforts to secure Petitioner's removal were interrupted

while his motion for a stay of removal was pending before the Second Circuit.  Thus, there does not appear to be any basis in fact to presume that the Jamaican consulate will not be forthcoming with travel documents.

Moreover, Petitioner's post-removal-order detention is not so long, even as of this writing, as to establish that removal is no longer foreseeable. Indeed, Petitioner himself admits that Jamaican consular officials generally await the conclusion of appeals before issuing travel documents.  Finally, Petitioner has not suggested any individual barriers to his repatriation, *see Zadvydas*, 533 U.S. at 684-85 (alien petitioner Zadvydas was a "stateless" individual), nor has he suggested any institutional barrier to his removal, *see Zadvydas*, 533 U.S. at 686 (alien petitioner Kim Ho Ma was from Cambodia, a country with which the United States has no repatriation agreement). Consequently, Petitioner has no viable claim under *Zadvydas* at this time.  *See Hitchens v. Elwood*, 2012 WL 3019936 (D.N.J. July 24, 2012).

Therefore, because Petitioner does not allege facts showing that the presumptively reasonable six-month period of detention has expired, and because Petitioner alleges no facts to substantiate his conclusion that there is "good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable future," as required by *Zadvydas*, 533 U.S. at 701, he has not shown that his detention is statutorily unauthorized or violates due process. *See, e.g., Joseph v. United States*, 127 Fed. Appx. 79, 81 (3d Cir. 2005)(affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6): "Under *Zadvydas*, a petitioner must provide 'good reason' to believe there is no likelihood of removal, 533 U.S. at 701, and Alva has failed to make that showing here"); *Soberanes v. Comfort*, 388 F.3d 1305 (10th Cir. 2004)(affirming dismissal of § 2241 petition challenging detention pursuant to § 1231(a)(6) where petitioner failed to provide good reason to believe that there is no likelihood of removal); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002)("in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future"); *Pierre v. Weber*, 2010 WL 1492604 (D.N.J. April 14, 2010) (summarily dismissing § 2241 petition as premature under *Zadvydas* and § 1231(a)(6) where petitioner filed petition during presumptively reasonable six-month period after removal became

20

final and failed to assert facts showing his removal is not reasonably foreseeable).  Accordingly, at this time, Petitioner's habeas petition must be denied.

To be clear, this dismissal/denial is without prejudice to the filing of a new § 2241 petition (in a new case) in the event that Petitioner can allege facts showing that he has been detained for more than six months since August 14, 2012, and there is good reason to believe that there is no significant likelihood of Petitioner's removal in the reasonably foreseeable future.  *See Akinwale*, 287 F.3d at 1052 ("Because circumstances may ultimately change in [petitioner's] situation, we affirm the dismissal [of his habeas petition] without prejudice to [his] ability to file a new § 2241 petition in the future").  In addition, if Petitioner believes he is unlikely to be removed in the near future, he may request DHS to review his situation.  *See* 8 C.F.R. § 241.13(d)(1)("An eligible alien may submit a written request for release to the HQPDU asserting the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future. The alien may submit whatever documentation to the HQPDU he or she wishes in support of the assertion that there is no

21

significant likelihood of removal in the reasonably foreseeable future").

## IV. CONCLUSION

For the foregoing reasons, this petition for habeas relief pursuant to 28 U.S.C. § 2241 will be dismissed without prejudice as premature, or alternatively, denied without prejudice for lack of merit at this time.  An appropriate Order follows.


CLAIRE C. CECCHI
United States District Judge

Dated: February 28, 2013

22